```
 1                      UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                         :
 4   UNITED STATES OF AMERICA,           :   14-CR-243
                                         :
 5                                       :
                  v.                     :
 6                                       :   500 Pearl Street
     FAIELLA, et al.,                    :   New York, New York
 7                                       :
                         Defendants.     :   January 27, 2014
 8   ------------------------------------X

 9
              TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
10              BEFORE THE HONORABLE HENRY B. PITMAN
                    UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Government:        SERRIN ANDREW TURNER, ESQ.
                                U.S. Attorney's Office
14                              One St. Andrew's Plaza
                                New York, New York 10007
15

16
     For Defendant/Shrem:       KEITH MILLER, ESQ.
17

18

19   Court Transcriber:         SHARI RIEMER
                                TypeWrite Word Processing Service
20                              211 N. Milton Road
                                Saratoga Springs, New York  12866
21

22

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

```
                                                              2
 1              THE CLERK: United States v. Charlie Shrem.
 2              Counsel, please state your name for the record.
 3              MR. TURNER: Good afternoon, Your Honor. Serrin
 4   Turner for the Government. With me at counsel table is
 5   Special Agent Gary Alfred from the IRS.
 6              THE COURT: Good afternoon.
 7              MR. MILLER: Good afternoon, Your Honor. Keith
 8   Miller representing for this bail hearing, Mr. Shrem.
 9              THE COURT: Mr. Miller, you said you're going to be
10   here for the initial proceeding only, for bail only?
11              MR. MILLER: That's correct, Your Honor.
12              THE COURT: Mr. Shrem, my name is Magistrate Judge
13   Pitman. The purpose of this proceeding is to inform you of
14   certain rights that you have, to inform you of the charges
15   against you, consider whether counsel should be appointed for
16   you and to decide under what conditions if any you should be
17   released.
18              Can I have the date and time of arrest, please?
19              MR. TURNER: The defendant was arrest at
20   approximately 7:30 in the evening yesterday, Your Honor.
21              THE COURT: Mr. Shrem, you have the right to remain
22   silent. You're not required to make any statements. Even if
23   you have made any statements to the authorities you need not
24   make any further statements. Anything you do say can be used
25   against you.
```

```
                                                                 3
 1              You have the right to be released either
 2   conditionally or unconditionally pending trial unless I find
 3   that there are no conditions or combination of conditions that
 4   would reasonably assure your presence in court and the safety
 5   of the community.
 6              You have the right to be represented by counsel
 7   during all court proceedings including this one and during all
 8   questioning by the authorities.  It's my understanding that
 9   you're currently represented by retained counsel.  I want to
10   advise you however that if at any time you run out of money to
11   retain counsel you can apply to the court at any time for the
12   appointment of counsel.  Do you understand that?
13              THE DEFENDANT: Yes.
14              THE COURT: Mr. Shrem, you're charged in a complaint
15   with three counts.  Count 2 charges you with violating --
16   charges you with operating an unlicensed money transmitting
17   business in violation of Title 18 United States Code Section
18   1960.  Count 3 charges you with conspiracy to commit money
19   laundering in violation of Title 18 United States Code Section
20   1956(h), and Count 3 [sic] charges you with willful failure to
21   file suspicious activity reports in violation of Title 31
22   United States Code Section 5318 and 5322 and Title 31 of the
23   Code of Federal Regulations Section 1022.320.
24              Mr. Miller, have you received a copy of the
25   complaint?
```

4

1 MR. MILLER: Yes, Your Honor. I've reviewed the
2 complaint with my client and waive public reading.
3 THE COURT: Mr. Shrem, you have the right to a
4 preliminary hearing at which the Government will have the
5 burden of establishing that the crimes charged in the
6 complaint have been committed and that you're the person who
7 committed them. If probable cause is not established you'll
8 be released from the charges. If probable cause is
9 established the Government would then have the right to
10 proceed to trial against you.
11 If you're in custody you have the right to a
12 preliminary hearing within 14 days. If you're not in custody
13 you have the right to a preliminary hearing within 21 days.
14 However, no preliminary hearing will be held if either the
15 grand jury indicts you or if the Government files an
16 accusatory instrument called an information prior to the date
17 set for the preliminary hearing.
18 I'll set the preliminary hearing date after I
19 determine bail. I will hear from the Government first and
20 then defense counsel.
21 MR. TURNER: Thank you, Your Honor. The Government
22 seeks detention on flight risk grounds.
23 THE COURT: Go ahead.
24 MR. TURNER: I'll start off with the defendant here
25 has a strong incentive to flee. The Government's evidence in

5

1  the case is overwhelming.  As set forth in the complaint the
2  Government has obtained extensive email evidence showing that
3  Shrem was knowingly working with a co-conspirator to basically
4  run an illegal bit coin exchange on Soak Road [Ph.] and to
5  sell bit coins to Soak Road users who Shrem knew were going to
6  use them to make elicit purchases on the drug dealing website
7  at Soak Road.
8         He faces very serious penalties because of the
9  volume of money involved here.  The defendant basically moved
10 $1 million through its company.  That ended up facilitated
11 drug dealing.  Based on the applicable guidelines, 2S1.1, his
12 offense level is 34 given that he knew the funds at issue were
13 intended to promote drug trafficking.  So his guidelines range
14 is approximately 109 to 135 months.  I draw a preliminary
15 calculations.
16         So not only does he face a strong incentive to flee
17 but Mr. Shrem has also voiced an intent to flee if he were
18 ever to encounter these sorts of circumstances.  There's a You
19 Tube interview of Mr. Shrem in which he discussed what would
20 happen if he were ever arrested.  We're prepared to play it
21 for Your Honor.  It's only a 20 second clip or so.  Here's a
22 transcript of the relevant portion.
23              [Pause in proceedings.]
24         MR. TURNER: But in this excerpt he's being asked
25 about what could the Government do to shut his company down

                                                                6

1  and this is what he says.
2                    [You Tube being played.]
3            MR. TURNER: So he's clearly voiced an intent to
4  flee, purported to have made plans for that scenario, and the
5  Government believes he also has the means to flee.  Mr. Shrem
6  has haled himself out as a bit coin millionaire.  He through
7  his business has access to large amounts of bit coins and it's
8  important to understand that these bit coins are completely
9  portable.  They can be stored.  They're just computer files.
10 So they can be stored anywhere computer files can be stored.
11 On a thumb drive, on a storage locker in the Cloud.  So they
12 can be accessed from anywhere.  You can think of them sort of
13 like a portable offshore bank account.  So with that sort of -
14 - with those sorts of portable resources he would have the
15 means to support himself if he did flee.
16           Moreover, there were documents that were seized from
17 Mr. Shrem upon his arrest showing that he maintains an
18 offshore bank account.
19           He also purports to own a private plane.  He is on
20 the board of a business that allows you to book plane travel
21 with bit coins and he travels abroad extensively.  Mr. Shrem
22 has traveled on 16 international trips since 2007, nine since
23 2012.  Included are the Netherlands, Turkey, Panama, Italy,
24 Japan, Aruba, Iceland, Mexico and the Grand Bahamas.  The last
25 one having been on a chartered private jet.

7

1           THE COURT: Where does he own -- you said he's
2  believed to own a private plane.  Where is the private plane
3  located?
4           MR. TURNER: We do not know the answer to that
5  question, Your Honor.  That's a statement that he himself has
6  made.
7           THE COURT: Made --
8           MR. TURNER: Publicly on his Twitter account for
9  example.
10          THE COURT: I see.
11          MR. TURNER: And as Pretrial notes, he has potential
12 for dual citizenship in Israel given his birth there.
13          So for all those reasons we believe detention is
14 appropriate in this case.
15          THE COURT: Just one or two questions before I hear
16 from your adversary.  According to the Pretrial Services
17 Report the defendant's estimated net worth is in excess of $6
18 million.  Has any of that been seized?
19          MR. TURNER: No.  No, it hasn't, Your Honor.
20          THE COURT: Anything else before I hear from Mr.
21 Miller?
22          MR. TURNER: No.  Thank you, Your Honor.
23          THE COURT: Mr. Miller.
24          MR. MILLER: Good afternoon, Your Honor.  Your Honor,
25 we think that the defendant should be allowed bail in this

1  situation.  First of all, we would object to a You Tube video
2  being shown in connection with this bail hearing.
3              THE COURT: Why?
4              MR. MILLER: First of all, we didn't know of its
5  existence.
6              THE COURT: Well, Mr. Shrem knew of its existence.
7              MR. MILLER: My client is advising that there are
8  other You Tube videos of him making other statements like that
9  everyone should be in compliance with the laws regarding
10 virtual currency and that this was taken out of context.
11             Your Honor, this is a 24 year old individual who
12 within the last year and a half, two years graduated from
13 college and moved out of his parents house within the last six
14 months and got involved in this virtual currency business and
15 became an entrepreneur.  He started a company.
16             He was born in New York, raised in New York.  Has
17 strong ties to the Jewish community in Brooklyn.  One thing I
18 would note, Your Honor, is that he was arrested at JFK
19 returning from a speaking engagement where he spoke about
20 virtual currency over in Amsterdam.  He was not trying to
21 flee.  He was coming back to the United States.  He resides in
22 midtown and his parents reside in Brooklyn.
23             The Pretrial Services Report, Your Honor, I would
24 like to note some discrepancies with that.  First of all, in
25 the assets that are identified there, there are two main

1   assets there, Your Honor.  One is a company that Mr. Shrem
2   started and I think is referred to in the sealed complaint
3   which is Bit Instant and there's a value there that's been put
4   on that.  That company has not been operating since July of
5   2013.  So the value is pure speculation on how much that is
6   worth.
7              THE COURT: Well, that valuation comes from Mr.
8   Shrem.
9              MR. MILLER: That comes from Mr. Shrem saying that he
10  is -- there's an attempt to raise money and get the company
11  back going but other than that there's nothing to the company
12  at this point in time.  There's no operations.  There are no
13  assets to the company.  It's an attempt to raise company to
14  get a virtual currency company back up and running.
15             There's another entity identified there, a
16  foundation that he is part of, a Bit Coin foundation.  He has
17  no interest in that entity except for he's a member of the
18  board.  So any assets identified there also aren't assets that
19  he's entitled to.
20             THE COURT: Well, I mean my understanding is that the
21  assets listed in the Pretrial Services Report are assets that
22  the defendant reported.  You're now telling me that Bit
23  Instant has no value and that he has no interest in the Bit
24  Coin Foundation.  Why then did he report those as assets to
25  Pretrial?

1     MR. MILLER: I can't tell you that except for -- I
2 can tell you that Bit Coin Foundation is a foundation and he's
3 a member of the board.  They have assets but Mr. Shrem is
4 not -- cannot dictate what's done with those foundation assets
5 and the Bit instant company, Your Honor, there was an attempt
6 to raise capital for that company to get it going and that's
7 been an ongoing process.  So I suspect that that number is
8 based on a valuation that if money was raised it would be
9 worth that amount.
10     Your Honor, I'd also state that the --
11     THE COURT: The balance of the assets -- am I correct
12 in my understanding the balance of the assets are real cash,
13 not bit coins?
14     MR. MILLER: Yes, Your Honor.  Your Honor, he has I
15 think a bank account that's identified there.  That's his
16 real -- that's his assets.
17     THE COURT: Okay.
18     MR. MILLER: Mr. Shrem's family and girlfriend are
19 here today to support him.  His family is willing to sign onto
20 a bond to secure his attendance before this court.
21     At this point, Your Honor, the allegations in the
22 sealed complaint are simply allegations and Mr. Shrem is
23 presumed innocence.  We ask the court to permit Mr. Shrem the
24 opportunity to go home with his family based on a bond secured
25 by four co-signers.  That the court consistent with the

1  Pretrial Services recommendation allow drug testing and
2  treatment, restrict travel to Southern District of New York
3  and Eastern District of New York and that Pretrial Services
4  coordinate with a home detention monitoring system.  Your
5  Honor, we'd ask that that occur between now and the next --
6  within a week and that pending that time period that Mr. Shrem
7  be permitted to go -- to leave based on the bond that his
8  family are willing to put up.
9           THE COURT:  Is there cash or property that can be put
10 up to secure the bond?
11          MR. MILLER:  I'm sorry.  I couldn't hear Your Honor.
12          THE COURT:  Is there cash or property that can be put
13 up to secure the bond?
14          MR. MILLER:  Yes, there can.  Yes.
15          THE COURT:  What can be put up to secure the bond?
16          MR. MILLER:  Mr. Shrem's bank account has cash in it.
17          THE COURT:  Do they have -- do his parents own their
18 residence?  Is it an apartment or a house?
19          MR. MILLER:  They do.  They own residence.
20          THE COURT:  Is it a house?  Is it an apartment?  What
21 is it?
22          MR. MILLER:  House, Your Honor.
23          THE COURT:  Is there a mortgage on it?
24          MR. MILLER:  Very small, Your Honor.
25          THE COURT:  Do we know what the parents' home is

                                                                    12
 1  worth?  Do you want to take a minute to confer with him?
 2            MR. MILLER: Yes.  Thank you, Your Honor.
 3                     [Pause in proceedings.]
 4            MR. MILLER: Your Honor, the parents have two
 5  residents.  Both have mortgages, small mortgages on them but
 6  total equity is slightly less than a million.
 7            THE COURT: They're presumably willing to put that
 8  up?
 9            MR. MILLER: Yes, Your Honor.
10            THE COURT: All right.  Anything else, Mr. Miller?
11  I'm going to hear from Mr. Turner again and I'll hear from you
12  again but is there anything else you want to tell me right
13  now?
14            MR. MILLER: No, thank you.
15            THE COURT: Mr. Turner.
16            MR. TURNER: Your Honor, if you're inclined to set
17  bond the Government would ask that you have four co-signers,
18  not just two, especially in light of information from the
19  Pretrial Report that there's a rift between Mr. Shrem and his
20  parents.  So we would want to make sure that there's
21  sufficient co-signers with moral suasion to insure the
22  defendant's appearance and we would also want all conditions
23  to be met before release.  In particular, the electronic
24  monitoring.  Again, based on Mr. Shrem's own statements
25  indicating that he would attempt to flee if he had the chance

1  to do so.
2         THE COURT: Let me -- Mr. Turner, I appreciate the
3  Government's concern given the statement in the video, but it
4  seems to me that if the parents have two residences with a
5  value approaching $1 million that they're willing to put up as
6  security that seems like it's substantial security given
7  that -- bearing in mind the other facts that we're talking
8  about, a non violent crime.  We're talking about an individual
9  with no criminal history.
10        MR. TURNER: I understand, Your Honor.  Again, it's
11 just based on wanting to have that security in place before
12 the defendant is actually released.  In terms -- I understand
13 the parents' financial commitment but in terms of their
14 ability to exercise moral suasion over the defendant we do
15 have a concern based on the information in the Pretrial Report
16 about that.
17        THE COURT: Mr. Miller.
18        MR. MILLER: Your Honor, I think as you said this
19 is -- Mr. Shrem has no prior background.  He's 24 years old.
20 His parents here are willing to put up their life savings that
21 they've invested in two homes to secure his attendance back
22 here, Your Honor.  This is a non violent offense that he's
23 being charged with.  So we would ask that that be sufficient.
24        THE COURT: Where are the residences located?
25        MR. MILLER: One is in New Jersey and one is in

                                                                14

1  Brooklyn.
2              [Pause in proceedings.]
3           THE COURT: Mr. Miller, let me just ask you one other
4  question.  The Pretrial Services Report also indicates other
5  asset -- other asset type - life insurance and the amount
6  listed there is $1 million.  Is that the surrender value?  It
7  has a current surrender value of $1 million?
8           MR. MILLER: No.  That's the policy amount is $1
9  million.
10          THE COURT: So do we know what the value -- is it a
11 whole life or a term?
12          THE DEFENDANT:  It's a whole life.
13          THE COURT: Look, talk to your -- let Mr. Miller
14 speak for you.  My question is going to be what's the current
15 surrender value of the policy.
16             [Pause in proceedings.]
17          MR. MILLER: Mr. Shrem doesn't know -- he's had the
18 policy for approximately a year.  It's $1 million policy and
19 he pays approximately $600.00 a month, Your Honor.
20          THE COURT: That's not going to have much of a
21 surrender value.
22             [Pause in proceedings.]
23          THE COURT: I'm going to set bail as follows in this
24 case.  I'm going to set bail at $1 million personal
25 recognizance bond co-signed by four financially responsible

1  persons or persons in a position to exercise moral suasion
2  secured by a mortgage on the parents' two residences.  Travel
3  limited to the Southern and Eastern Districts of New York,
4  surrender of all travel documents, no new applications, strict
5  Pretrial supervision with drug testing and treatment as
6  directed by the Pretrial Services Agency.
7  　　　　　　The defendant is to reside with his parents.  What's
8  their address, Mr. Miller?
9  　　　　　　MR. MILLER: Give me one second, Your Honor.
10 　　　　　　THE COURT: Sure.
11 　　　　　　　　　　　[Pause in proceedings.]
12 　　　　　　MR. MILLER: 2812 Quentin Road, Brooklyn.
13 　　　　　　THE COURT: 2812 Quentin --
14 　　　　　　MR. MILLER: Q-U-I-N-T-I-N.
15 　　　　　　THE COURT: Thank you.
16 　　　　　　MR. MILLER: Q-U-E-N-T-I-N, Your Honor.
17 　　　　　　THE COURT: Thank you.
18 　　　　　　　　　　　[Pause in proceedings.]
19 　　　　　　THE COURT: Defendant is to reside with his parents
20 in Brooklyn and subject to home detention with electronic
21 monitoring.
22 　　　　　　Do the parents have a landline phone?
23 　　　　　　THE DEFENDANT: Yes.
24 　　　　　　MR. MILLER: Yes, Your Honor.
25 　　　　　　THE COURT: Let me ask Pretrial.  If they have a

1  landline phone, how long does it take to set up the electronic
2  monitoring?
3           PRETRIAL: It depends, Your Honor, on each individual
4  case.  We need to make sure the landline doesn't have any
5  additional features which most phones do.  So they would have
6  to have those removed.  It would depend on their phone
7  company.
8           THE COURT: The defendant can be released when he --
9  his parents are in court, Mr. Miller?
10          MR. MILLER: Yes, they are, Your Honor.
11          THE COURT: The defendant can be released when he and
12 his parents co-sign the bond.  The remaining conditions are to
13 be met by Friday the 31st.  However, defendant is to report in
14 person to Pretrial until all conditions are met.
15          PRETRIAL: Your Honor, how often would you like him
16 to report in the interim?
17          THE COURT: Daily.
18          PRETRIAL: Daily, okay.
19          THE COURT: He's to report in person on a daily basis
20 to Pretrial until all conditions are met.
21          So, Mr. Shrem, you're going to be going home this
22 evening.  There are some other conditions that need to be met
23 with respect to your bail including electronic monitoring and
24 the mortgage on your parents' houses.  You need to report to
25 Pretrial every day in person until those conditions are met.

1  Okay?  Once those conditions are met you're subject to strict
2  Pretrial which doesn't require reporting to Pretrial every
3  day.   Because I think these conditions are appropriate
4  because of the strength of the Government's case as set forth
5  in the complaint and the comments and the video.  I appreciate
6  that sometimes people make comments in video which may or may
7  not have weight but I think the bail terms I've set strike an
8  appropriate balance.
9              So it's $1 million PRB co-signed by four financially
10 responsible persons or persons in a position to exercise moral
11 suasion secured by a mortgage on the parents' two residences,
12 travel only to the Southern and Eastern Districts of New York,
13 surrender of all travel documents, no new applications, strict
14 Pretrial supervision with drug testing and treatment as
15 directed by the Pretrial Services Agency, home detention with
16 electronic monitoring.  The defendant is to reside with his
17 parents at 2812 Quentin Road in Brooklyn.
18             The defendant can be released when the defendant and
19 the parents co-sign the bond with the remaining conditions to
20 be met by this Friday, January 31.  The defendant is to report
21 in person on a daily basis to Pretrial until all conditions
22 are met.
23             Mr. Shrem, I just want to advise you if you fail to
24 appear in court whenever you're required to or if you violate
25 any other condition of your release a warrant will issue for

```
                                                                   18
 1  your arrest.  You and your co-signers will be liable for $1
 2  million.  Your parents will lose their two houses and you
 3  could be charged with the offense of bail jumping.  You could
 4  be separately prosecuted and sentenced for bail jumping even
 5  if the money laundering and related charges against you were
 6  dismissed.  Do you understand that?
 7            THE DEFENDANT: Yes.
 8            THE COURT: Preliminary hearing date.  21 or 30?
 9            MR. MILLER: 30, Your Honor.
10            THE COURT: We'll set the preliminary hearing for the
11  26th of February.
12            Anything else from the Government?
13            MR. TURNER: No.  Thank you, Your Honor.
14            THE COURT: Mr. Miller, anything else?
15            MR. MILLER: No.  Thank you, Your Honor.
16            THE COURT: Thank you all.
17                          * * * *
18
19
20
21
22
23
24
25
```

```
                                                              19
1       I certify that the foregoing is a court transcript from
2  an electronic sound recording of the proceedings in the above-
3  entitled matter.
4
5                              _____
6                                        Shari Riemer
7  Dated:  April 25, 2014
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```