UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                :
UNITED STATES OF AMERICA,                       :
                                                :     ECF Case
              - v. -                            :     14 Crim. 243 (JSR)
                                                :
ROBERT FAIELLA,                                 :
      a/k/a "BTCKing," and                      :
CHARLIE SHREM,                                  :
                                                :
              Defendants.                       :
                                                :
------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT FAIELLA'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT

Timothy J. Treanor
Todd M. Beaton, Jr.
David W. Denton, Jr.
Francesca E. Brody
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 839-5300
Facsimile:   (212) 839-5599

*Attorneys for Robert Faiella*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

I. BACKGROUND .......................................................................................................................1

II. STANDARD OF REVIEW .....................................................................................................2

III. DISCUSSION .........................................................................................................................2

    I.    Bitcoin Is Not "Money" ...................................................................................................3

        A.    "Money" and "Funds" Under the Statute Mean Currency ..........................3

        B.    Bitcoin Is Not Currency .................................................................................5

        C.    Defining Bitcoin as "Money" Under the Statute Raises Constitutional Problems ................................................................................6

    II.    The Indictment Fails to Allege that Faiella Operated a "Money Transmitting Business" or Engaged in "Money Transmitting" ...............................7

        A.    Faiella Did Not Operate a Money Transmitting Business ..........................7

        B.    A Seller of Bitcoin Does Not Meet the Definition of Money Transmitter Under the Applicable Regulations .........................................8

        C.    The Second Circuit Recognizes That Operating a Money Transmitting Business Requires the Transmission of Money to a Third Party or Location ................................................................................9

        D.    Section 1960 Should Continue to Be Interpreted Narrowly ......................11

CONCLUSION ............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arthur Andersen LLP v. United States*,
   544 U.S. 696 (2005) .................................................................................................................7

*Bouie v. City of Columbia*,
   378 U.S. 347 (1964) ...............................................................................................................11

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ...................................................................................................................6

*Richards v. United States*,
   369 U.S. 1 (1962) .....................................................................................................................6

*Troll Co. v. Uneeda Doll Co.*,
   483 F.3d 150 (2d Cir. 2007) .....................................................................................................4

*United States v. Ali*,
   561 F. Supp. 2d 269 (E.D.N.Y. 2008) ......................................................................................3

*United States v. Bah*,
   574 F.3d 106 (2d Cir. 2009) .....................................................................................................9

*United States v. Banki*,
   685 F.3d 99 (2d Cir. 2012) .......................................................................................................9

*United States v. E-Gold, Ltd.*,
   550 F. Supp. 2d 82 (D.D.C. 2008) ..........................................................................................10

*United States v. Elfgeeh*,
   515 F.3d 100 (2d Cir. 2008) .................................................................................................9, 11

*United States v. Elfgeeh*,
   No. CR-03-0133CPS, 2004 WL 3767299 (E.D.N.Y. Apr. 13, 2004) .....................................11

*United States v. Gotti*,
   457 F. Supp. 2d 411 (S.D.N.Y. 2006) ......................................................................................2

*United States v. Velastegui*,
   199 F.3d 590 (2d Cir. 1999) ..............................................................................................10, 11

**CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

18 U.S.C. § 1956 .......................................................................................................................1, 5

18 U.S.C. § 1960 ................................................................................................................. *passim*

31 C.F.R. § 1010.100(m) (2013) ....................................................................................................6

31 C.F.R. § 1010.100(ff)(5)(ii)(F) (2013) .......................................................................................8

Fed. R. Crim. P. 12(b)(2) ................................................................................................................2

U.S. Const. art. I, § 8, cl. 5 .............................................................................................................4

# **TABLE OF AUTHORITIES**
(Continued)

Page(s)

**OTHER AUTHORITIES**

*Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, FIN-2013-G001, Financial Crimes Enforcement Network (Mar. 18, 2013), http://www.fincen.gov/statutes_regs/guidance/html/FIN-2013-G001.html.............5

*Bitcoin: More Than a Bit Risky*, FINRA (May 7, 2014), http://www.finra.org/Investors/ProtectYourself/InvestorAlerts/FraudsAndScams/P456458 ...................................................................................................6

Black's Law Dictionary (9th ed. 2009).......................................................................................3, 4

Internal Revenue Service, Notice 2014-21, *available at* http://www.irs.gov/pub/irs-drop/n-14-21.pdf .......................................................6

Stephen T. Middlebrook & Sarah Jane Hughes, *Regulating Cryptocurrencies in the United States: Current Issues and Future Directions*, 40 Wm. Mitchell L. Rev. 813 (2014)..........................................................................................1

**PRELIMINARY STATEMENT**

Defendant Robert Faiella respectfully submits this memorandum of law in support of his Motion to Dismiss Count One of the Indictment, which charges him with operating an unlicensed money transmitting business in violation of Title 18, United States Code, Section 1960. Count One should be dismissed because the alleged conduct does not constitute "money transmitting" as contemplated by the statute.

## I.  BACKGROUND

The Indictment charges Faiella in two counts with:  (1) operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960 (Indictment ¶ 1); and (2) participating in a money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Indictment ¶¶ 3-5).  Count One alleges that the money transmitting business at issue was "a Bitcoin exchange service Faiella operated on the 'Silk Road' website under the username 'BTCKing.'" (Indictment ¶ 1).

According to a criminal Complaint filed by the Government in this matter, "Bitcoins are a form of virtual currency, existing entirely on the Internet and not in any physical form.  The currency is not issued by any government, bank or company, but rather is generated and controlled automatically through computer software operating on a decentralized, 'peer-to-peer' network." (Compl. ¶ 14(a)).  More specifically, Bitcoin is a privately created commodity, acquired—or "mined"—by solving mathematical problems generated by a software algorithm. *See* Stephen T. Middlebrook & Sarah Jane Hughes, *Regulating Cryptocurrencies in the United States:  Current Issues and Future Directions*, 40 Wm. Mitchell L. Rev. 813, 818 (2014). Bitcoin is not backed by the United States Government or any government and it is not directly regulated by any specific federal or state regulatory agency.  (*See* Compl. ¶ 14(a).)  The purchase, sale, and exchange of Bitcoin is entirely legal, and the value of Bitcoin is determined

1

solely by the actions of private market participants.  (*See* Compl. ¶ 14(e), 14(a).)  A would-be user of Bitcoin can obtain it either by mining it through participation in the algorithm that creates it or purchasing it on the secondary market.  Middlebrook & Hughes, *supra*, at 818.  Bitcoin does not have any intrinsic liquidity.  Bitcoin is neither widely accepted nor is it supported by a monetary policy, and the fact that it can store value makes it no different in that regard from other more common commodities.

The Complaint alleges that Faiella sold Bitcoins to his customers at a markup, and that the Bitcoins were provided to the customers at "the user's Bitcoin 'address' analogous to a bank account number, which is designated by a complex string of letters and numbers." (Compl. ¶¶ 9, 14(c)).  The Complaint further alleges in detail ways in which Faiella obtained Bitcoins to sell to his customers.

## II.  STANDARD OF REVIEW

Rule 12 of the Federal Rules of Criminal Procedure provides that a defendant may seek dismissal of an indictment that fails to state an offense. Fed. R. Crim. P. 12(b)(2) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion") and 12(b)(3)(B) ("[A]t any time while the case is pending, the court may hear a claim that the indictment or information fails to . . . state an offense.").  When alleging a defect in an indictment, the Court must accept the facts alleged in the indictment as true. *United States v. Gotti*, 457 F. Supp. 2d 411, 421 (S.D.N.Y. 2006).

## III.  DISCUSSION

The Indictment in this matter is defective because it fails in two ways to allege conduct that meets the definition of "money transmitting" set forth in Title 18, United States Code, Section 1960:  (1) Bitcoin is not "money" under the statute; and (2) operating a Bitcoin exchange

is not "transmitting" money under the statute. The Indictment simply alleges that Faiella sold to his customers Bitcoin, a virtual currency that has value and can be used in limited exchanges, but is not money.

**I.    Bitcoin Is Not "Money"**

Under 18 U.S.C. § 1960, a defendant is guilty of an offense where he "knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business." The statute defines "money transmitting" to include "transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier." 18 U.S.C. § 1960(b)(2). Accordingly, a defendant can be guilty of an offense under the statute only where the object that he transmits is "money" or "funds." The statute, however, does not define the critical terms "money" or "funds." *See United States v. Ali*, 561 F. Supp. 2d 269, 272 (E.D.N.Y. 2008) ("[B]oth the federal statute and the entirety of New York's Banking Law lack a definition for the term 'money.'").

In this matter, the object at issue—Bitcoin—is neither "money" nor "funds" under the statute. A logical reading of the statute limits its application to "currency," which does not include Bitcoin. To expand the definition of "money" or "funds" beyond currency would cause the statute to lose all rational limitations.

    A.    <u>"Money" and "Funds" Under the Statute Mean Currency</u>

According to Black's Law Dictionary, the terms "money" and "funds" are nearly coextensive. Indeed, Black's defines "funds" to mean "[a] sum of money or other liquid assets established for a specific purpose." Black's Law Dictionary (9th ed. 2009). Money is a somewhat less elusive term. Black's Law Dictionary defines it in two primary ways: broadly, as "[a]ssets that can be easily converted to cash," and narrowly, as "[t]he medium of exchange

3

authorized or adopted by a government as part of its currency; esp. domestic currency." Black's Law Dictionary 1096 (9th ed. 2009).

The broad definition of money—convertible assets—cannot be applied to § 1960 without rendering that statute utterly meaningless. Indeed, if § 1960 applied to any asset with liquidity, it could encompass the business of moving almost any item and could make the transfer of any such items a felony offense in certain circumstances. It is a well-established canon of construction that statutes are to be interpreted to avoid illogical results. *See Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 160 (2d Cir. 2007) (rejecting interpretation of a statute that would render it "absurdly broad"). Accordingly, the broad definition of money simply cannot apply to § 1960.

The narrow definition of money—currency—applies a more natural and appropriate limitation on the application of § 1960. Although the legislative history of § 1960 is not instructive, it is obvious that in 1992, when the statute was first enacted, Congress could not have contemplated its application to virtual currencies, and the term "money" as used in the statute would likely have been considered synonymous with the term "currency." Indeed, the purpose of the statute—to ensure that those who transmit money for a business register with the federal government, obtain state licenses, and submit to applicable regulations—seems much more appropriately directed to those who transmit currency. *See* 18 U.S.C. § 1960(b)(1). The federal government has an obvious and substantial interest in currency: currency is issued by the federal government; it is printed by the federal government; and its value is regulated by federal monetary policy. *See generally* U.S. Const. art. I, § 8, cl. 5 (bestowing in the legislature the power "[t]o coin Money, [and] regulate the Value thereof"). A statute that seeks to punish those who transmit currency for others for profit but fail to properly register or obtain applicable licenses makes sense. On the other hand, the purpose of a statute that seeks to punish those who

fail to register or obtain proper licenses for transmitting a virtual internet-based commodity that is completely a private creation is not apparent. Bitcoin is not directly regulated by the federal government or subject to monetary policy, and the federal government only recently expressed an interest in seeing the registration and licensing of those who engage in certain transactions involving Bitcoin. *See Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, FIN-2013-G001, Financial Crimes Enforcement Network (Mar. 18, 2013), http://www.fincen.gov/statutes_regs/guidance/html/FIN-2013-G001.html. That occurred just over a year ago, on March 18, 2013, when the Financial Crimes Enforcement Network ("FinCEN"), the arm of the Treasury Department that is responsible for safeguarding the financial system from illicit use and money laundering activity, first issued guidance on the application of FinCEN's regulations to virtual currencies. *See id.*

Finally, had Congress wanted the term "money" to be defined expansively it would have done so explicitly. That is clear from a quick comparison to the federal money laundering statute, 18 U.S.C. § 1956, which does not rely on an expansive definition of "money" but instead expressly and broadly applies to, among other things, certain "financial transactions involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity." 18 U.S.C. § 1956(c)(2).

B. Bitcoin Is Not Currency

The U.S. Government recognizes significant differences between "currency" and Bitcoin. FinCEN defines "currency" as:

> [t]he coin and paper money of the United States or of any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issuance. Currency includes U.S. silver certificates, U.S. notes and Federal Reserve notes. Currency also includes official foreign bank notes that are customarily used and accepted as a medium of exchange in a foreign country.

5

31 C.F.R. § 1010.100(m) (2013).  Bitcoin clearly does not meet this definition and therefore is not "currency."

FinCEN further distinguishes "currency (also referred to as 'real currency')" from "virtual currency" which includes Bitcoin and is defined as "a medium of exchange that operates like a currency in some environments, but does not have all of the attributes of real currency." *See Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies*, FIN-2013-G001, *supra*.  FinCEN notes in particular that "virtual currency does not have legal tender status in any jurisdiction." *Id.*

The significant differences between "currency" and "virtual currency" are further recognized by the Internal Revenue Service ("IRS"), which does not treat "virtual currency" as "currency" for purposes of determining whether a transaction results in foreign currency gain or loss under U.S. federal tax laws. *See* Internal Revenue Service, Notice 2014-21, *available at* http://www.irs.gov/pub/irs-drop/n-14-21.pdf (last accessed July 3, 2014); *accord Bitcoin: More Than a Bit Risky*, FINRA (May 7, 2014), http://www.finra.org/Investors/ProtectYourself/ InvestorAlerts/FraudsAndScams/P456458 (discussing IRS's position that Bitcoin is property).

C. Defining Bitcoin as "Money" Under the Statute Raises Constitutional Problems

Interpreting the terms "money" or "funds" under the statute to include a commodity such as Bitcoin raises concerns that § 1960 fails to "provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).  "[T]he legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9 (1962).  The ordinary understanding of "money" and "funds" is consistent with the definition offered above:  currency, whether reflected in cash, specie, check, bank wire, or account balance.  It does not include cars, real estate, baseball cards,

6

Beanie Babies, Bitcoin, or other assets that, although valuable and potentially even a medium of exchange, do not fall within our ordinary understanding of the terms "money" or "funds."

The Supreme Court has instructed courts, when confronted with a statute of ambiguous and potentially infinite reach, to interpret it consistent with the rule of lenity. Courts should "exercise[] restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, or what the law intends to do if a certain line is passed." *Arthur Andersen LLP v. United States*, 544 U.S. 696, 703 (2005) (citations omitted). Here, the statutory terms "money" and "funds" can either be given the ordinary meaning of "currency" or they can be given a meaning so broad as to have no meaning at all. The District Court should show the concern for plain meaning and fair warning that the Supreme Court has instructed, and find that the Indictment fails to allege a transaction in "money" or "funds" and therefore fails to state an offense under § 1960.

**II.     The Indictment Fails to Allege that Faiella Operated a "Money Transmitting Business" or Engaged in "Money Transmitting"**

Count One of the Indictment should also be dismissed because the Indictment fails to allege that Faiella operated a "money transmitting business" or engaged in "money transmitting" as contemplated by the statute.

### A.    Faiella Did Not Operate a Money Transmitting Business

Section 1960 prohibits the unlicensed operation of a "money transmitting business." The use of the term "business" in the statute clearly requires that a defendant sell money transmitting services to others for a profit. Here, the Indictment fails to allege that Faiella sold such services. Rather, he is alleged to have sold Bitcoin to customers who engaged him as a source of Bitcoin. To the extent that Faiella is alleged to have participated in other activities to secure Bitcoin to

7

sell, such activities were purely incidental to the sale of Bitcoin, were not requested by his customers, were unknown to his customers, and do not make his business a money transmitting business. There are simply no allegations that customers asked Faiella to transmit Bitcoin to other locations or persons. Rather, the allegations are simply that customers paid Faiella to provide them with Bitcoin.

### B. A Seller of Bitcoin Does Not Meet the Definition of Money Transmitter Under the Applicable Regulations

The Indictment alleges that Faiella acted as a money transmitter by operating a Bitcoin exchange. A seller of Bitcoin, however, is not included within FinCEN's definition of "money transmitter" and indeed such conduct is expressly excluded from the definition. The regulations provide, in relevant part:

> (5) *Money transmitter—(i) In general.* (A) A person that provides money transmission services. The term 'money transmission services' means the acceptance of currency, funds, or other value that substitutes for currency from one person and the transmission of currency, funds, or other value that substitutes for currency *to another location or person* by any means. . . .
>
> (ii) Facts and circumstances; Limitations. Whether a person is a money transmitter as described in this section is a matter of facts and circumstances. The term "money transmitter" shall not include a person that only: . . .
>
> (F) Accepts and transmits funds *only integral to the sale of goods or the provision of services*, other than money transmission services, by the person who is accepting and transmitting the funds.

31 C.F.R. § 1010.100(ff)(5)(ii)(F) (2013) (emphasis added). Here, the Indictment alleges only that Faiella sold Bitcoin to his customers. There is no allegation that Faiella transmitted Bitcoin to another location or person for his customers. Moreover, since Bitcoins are "goods," Faiella's alleged conduct is excluded from the definition of the term "money transmitter."

8

### C. The Second Circuit Recognizes that Operating a Money Transmitting Business Requires the Transmission of Money to a Third Party or Location

The law in the Second Circuit further supports the assertion that Faiella did not operate a money transmitting business because he did not, nor was he instructed by his customers to, transfer money to a third party or location. A traditional money transmitting business "operates in a similar fashion to a Western Union business." *United States v. Elfgeeh*, 515 F.3d 100, 108 (2d Cir. 2008) (quoting testimony of FBI agent). A critical element of such an operation is that "the business must *transmit* money *to a recipient in a place that the customer designates*, for a fee paid by the customer." *United States v. Banki*, 685 F.3d 99, 113 n.9 (2d Cir. 2012), as amended (Feb. 22, 2012) (emphasis added); *see also id.* at 113 (holding that this description of a money transmitting business is "legally correct"); *United States v. Bah*, 574 F.3d 106, 110 (2d Cir. 2009) (describing Government's evidence that "certain customers came to Bah's restaurant in the Bronx, delivered U.S. currency, *and instructed Bah to deliver the equivalent value of local currency to recipients* in West Africa" (emphasis added)).

Additionally, although the statute contains no definition of the term "transfer," as included in the definition of the term "money transmitting," the Second Circuit has construed the statute to require direction of the funds from a customer to a third party identified by the customer:

> A money transmitting business receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually a foreign country. After the customer gives the money transmitter an amount to send to the designee, the transmitter notifies the "payer" with whom it has a contractual arrangement in the recipient country. The payer then notifies the designated recipient of the money, and pays the money to the designee at the payer's office. The transmitter then remits to the payer the amount paid to the designee, plus the payer's commission.

*United States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999).

9

Faiella's conduct as alleged in the Indictment and elaborated upon in the Complaint is quite different from that which the Second Circuit requires under the statute. Faiella was tasked by customers to provide them with a valuable item—Bitcoin. The customers did not direct him to send their funds to a third party. Absent an active direction that funds be transferred to a place designated by the customer, Faiella merely acted as any retailer, purchasing Bitcoin wholesale and selling it to members of the public for a fee.

On this point, it is useful to contrast the operation of Faiella's alleged Bitcoin exchange with the business at issue in *United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 85 (D.D.C. 2008). In that case, the D.C. District Court denied a motion to dismiss charges under § 1960 brought against an issuer of an online virtual currency known as "e-gold." The conduct alleged in that case, however, was much different from Faiella's alleged conduct. Unlike the decentralized system responsible for Bitcoin, e-gold was created and operated by a single company that received national currency from customers, provided them with an account for an equivalent amount of e-gold, and then facilitated transfers between e-gold accounts. *See id.* at 85. The company's business model was that "[f]or every transfer of e-gold from one e-gold account to another, e-Gold collects a transaction fee." *Id.* Critically, these transfers were conducted by the defendants and directed by "the account holder[, who] can then use the e-gold to buy a good or pay for a service, or to transfer funds to someone else." *Id.* Here, however, Faiella is not alleged to have transmitted funds from one party to another at the direction of his client. He is simply alleged to have bought and sold Bitcoin. To the extent that he made any "transfer," it was only the sort of transfer inherent in any purchase or sale, and not the sort of directed transmittal required by the statute's definition of "money transmitting."

D.      Section 1960 Should Continue to Be Interpreted Narrowly

Finally, to read Section 1960 to prohibit Faiella's conduct—simply selling Bitcoin to customers—without also requiring that Faiella transfer the Bitcoin to a third party or location at the direction of the customer would raise serious constitutional issues. "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, s 10, of the Constitution forbids." *Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964). No court has ever applied the money transmitting statute to conduct such as that described in the Complaint, and the narrow statutory prohibition on unlicensed Western Union-style businesses has held sway in this Circuit for fifteen years. Applying a "new construction of the statute" that encompasses the sort of purchase-transfer Faiella is alleged to have engaged in would "depriv[e] [Faiella] of rights guaranteed to [him] by the Due Process Clause." *Id.* at 362.

Indeed, the Second Circuit's limited definition of money transmitting in *United States v. Velastegui* has previously been the only thing saving the money transmitting statute from invalidity for failure to "give fair warning of the conduct that it makes a crime." *Bouie,* 378 U.S. at 350-51. In *United States v. Elfgeeh*, No. CR-03-0133CPS, 2004 WL 3767299 (E.D.N.Y. Apr. 13, 2004), the district court rejected a due process challenge to § 1960 by relying on the Second Circuit's conclusion that a "'money transmitting business' as used in Section 1960 unambiguously involves 'receiv[ing] money from a customer and then, for a fee paid by the customer, transmit[ting] that money to a recipient in a place that the customer designates.'" *Id.* at *8 (quoting *Velastegui*, 199 F.3d at 592, 595). If this Court were to apply a broader construction of the statute than that approved in *Velastegui* and applied in *Elfgeeh*, it would be precisely the sort of "unforeseeable judicial enlargement of a criminal statute" that the Due Process Clause

11

forbids, and it would raise severe questions about the validity of § 1960 as a whole owing to its failure to provide adequate notice of the conduct it forbids. Accordingly, this Court should conclude that the Indictment fails to allege an offense under § 1960, and that Count One should be dismissed.

## CONCLUSION

For the foregoing reasons, Faiella respectfully requests that the Court dismiss Count One of the Indictment.

Dated: July 4, 2014
      New York, New York

/s/ Timothy J. Treanor
_____
Timothy J. Treanor
  ttreanor@sidley.com
Todd M. Beaton, Jr.
  tbeaton@sidley.com
David W. Denton, Jr.
  ddenton@sidley.com
Francesca E. Brody
  fbrody@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

*Attorneys for Robert Faiella*