e944FAIp

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              14 CR 00243

ROBERT FAIELLA,

          Defendant.

------------------------------x

                                    New York, N.Y.
                                    September 4, 2014
                                    4:10 p.m.

Before:

                    HON. JED S. RAKOFF,

                                  District Judge

                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
SERRIN A. TURNER
     Assistant United States Attorney

SIDLEY AUSTIN LLP
     Attorneys for Defendant
TIMOTHY TREANOR
TODD BEATON
FRANCESCA BRODY




ALSO PRESENT:  GARY ALFORD, Special Agent

1                   (Case called)
2                   THE COURT:  I understand the defendant is going to
3       enter a plea.  Is that to both counts?
4                   MR. TREANOR:  Only to count one, your Honor.
5                   THE COURT:  Is there a plea agreement?
6                   MR. TURNER:  Yes, your Honor.
7                   THE COURT:  Let me ask the government, what do you
8       take to be the meaning of the word "sua sponte"?
9                   MR. TURNER:  Spontaneously, your Honor.
10                  THE COURT:  Yes, all right.  So please explain to me
11      what it means that neither party will suggest that either the
12      Court or the probation office consider a departure or
13      adjustment under the guidelines sua sponte?
14                  That appears twice on page 3.
15                  MR. TURNER:  I believe all that is meant there, your
16      Honor, is that if there are particular questions that probation
17      has for us that might result in an enhancement or something
18      like that, then we will answer those honestly and appropriately
19      but that we will not -- in terms of what we are agreed to at
20      present, we agreed to --
21                  THE COURT:  For example, the parties agree that
22      neither party will seek any departure or adjustment pursuant to
23      the guidelines that is not set forth herein, nor will either
24      party suggest that the probation office consider such a
25      departure or adjustment under the guidelines or suggest that

1    the Court sua sponte consider any such departure or adjustment.
2              How could someone possibly suggest that the Court act
3    sua sponte?  It wouldn't be sua sponte if the Court acted at a
4    suggestion.
5              MR. TURNER:  You may be right, your Honor.  It is not
6    the most well phrased.  It is our stock language.
7              THE COURT:  It is your stock language, and I have been
8    complaining about it for 19 years, and I am just wondering when
9    the mighty U.S. Attorney's Office for the Southern District of
10   New York is going to learn the meaning of an everyday Latin
11   phrase.
12             MR. TURNER:  I can relay your concerns to our office,
13   your Honor.
14             THE COURT:  Please do.  While you're doing it, say
15   that since this has fallen on deaf ears for the last 19 years,
16   there will come a point when I will reject the agreement
17   altogether on the grounds that if one line is gibberish, it
18   might all be gibberish.  Please look up the meaning of the word
19   gibberish if you need to.
20             MR. TURNER:  I understand.
21             Place the defendant under oath.
22             (Defendant sworn)
23             THE COURT:  Mr. Faiella, let me advise you that
24   because you are under oath, anything that you say that is
25   knowingly false could subject you to punishment for perjury or

e944FAIp

1   obstruction of justice or making a false statement.
2             Do you understand that?
3             THE DEFENDANT:  Yes, your Honor.
4             THE COURT:  Do you read, write, speak, and understand
5   English?
6             THE DEFENDANT:  Yes.
7             THE COURT:  Of what country are you a citizen?
8             THE DEFENDANT:  United States, your Honor.
9             THE COURT:  Where were you born?
10            THE DEFENDANT:  Winthrop, Massachusetts.
11            THE COURT:  How far did you go in school?
12            THE DEFENDANT:  I have a college degree, your Honor.
13            THE COURT:  I know you're married because your wife,
14  I'm sure with the very best of intentions, keeps sending me
15  letters.
16            THE DEFENDANT:  Yes, she does, your Honor.
17            THE COURT:  But I'm afraid she needs to understand
18  that it should be sent through counsel, not directly.
19            THE DEFENDANT:  I understand.
20            THE COURT:  Have you ever been treated by a
21  psychiatrist or psychologist?
22            THE DEFENDANT:  No, sir.
23            THE COURT:  Have you ever been hospitalized for any
24  mental illness?
25            THE DEFENDANT:  No, sir.

1               THE COURT:  Have you ever been treated or hospitalized
2     for alcoholism?
3               THE DEFENDANT:  No, your Honor.
4               THE COURT:  Have you ever been treated or hospitalized
5     for narcotics addiction?
6               THE DEFENDANT:  No, your Honor.
7               THE COURT:  You're currently under the care of a
8     doctor, and I am somewhat familiar with your physical
9     condition; but for these immediate purposes, what I need to
10    know is whether there is anything about your present physical
11    situation that affects your mental capacity.  Are you taking
12    medicine, for example?
13              THE DEFENDANT:  Yes, I am, but it doesn't affect any
14    of my judgment, your Honor.
15              THE COURT:  Is there anything about your physical
16    condition that affects your ability to understand these
17    proceedings?
18              THE DEFENDANT:  No, sir.
19              THE COURT:  In fact, is your mind clear today?
20              THE DEFENDANT:  Very much so.
21              THE COURT:  Do you understand these proceedings?
22              THE DEFENDANT:  Yes, your Honor.
23              THE COURT:  On the basis of the defendant's responses
24    to my questions and my observations of his demeanor, I find he
25    is fully competent to enter an informed plea at this time.

1          Now, you have a right to be represented by counsel at
2    every stage of these proceedings.
3          Do you understand that?
4          THE DEFENDANT:  Yes.
5          THE COURT:  If at any time you can't afford counsel,
6    the Court will appoint one for you free of charge.
7          Do you understand that?
8          THE DEFENDANT:  I understand, sir.
9          THE COURT:  You're represented by the firm of Sidley
10   Austin.  Is that appointed or retained?
11         Counsel?
12         MR. TREANOR:  CJA, your Honor.
13         THE COURT:  Appointed, yes.
14         So Mr. Faiella, have you had a full opportunity to
15   discuss this case with your counsel?
16         THE DEFENDANT:  Sure, your Honor.
17         THE COURT:  Have you told them everything you know
18   about this matter?
19         THE DEFENDANT:  Yes, your Honor.
20         THE COURT:  Are you satisfied with their
21   representation?
22         THE DEFENDANT:  Absolutely.
23         THE COURT:  Now, you are charged in Indictment
24   14 Criminal 243 with two felony counts, and you have a right to
25   go to trial and put the government to its proof on those

1  counts, but I understand from the government that you wish to
2  plead guilty to count one in satisfaction of those charges.
3          Is that right?
4          THE DEFENDANT:  That's correct, sir.
5          THE COURT:  Before I can accept any plea of guilty, I
6  need to make certain that you understand the rights that you
7  will be giving up if you plead guilty, so I want to go over
8  with you now the rights that you will be giving up.
9          Do you understand?
10         THE DEFENDANT:  Certainly, sir.
11         THE COURT:  First, you have the right to a speedy and
12 public trial by a jury on the charges against you.
13         Do you understand that?
14         THE DEFENDANT:  Yes, I do.
15         THE COURT:  Second, if there were a trial, you would
16 be presumed innocent, and the government would be required to
17 prove your guilt beyond a reasonable doubt before you could be
18 convicted of any charge.
19         Do you understand that?
20         THE DEFENDANT:  Yes, I do.
21         THE COURT:  Third, at the trial, you would have the
22 right to be represented by counsel; and once again, if you
23 still could not afford counsel, the Court would appoint one to
24 represent you free of charge throughout the trial and at all
25 other proceedings.

1              Do you understand that?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Fourth, at the trial, you would have the

4   right to see and hear all of the witnesses and other evidence

5   against you.  Your attorney could cross-examine the

6   government's witnesses and object to the government's evidence

7   and could have subpoenas issued to compel the attendance of

8   witnesses and other evidence on your behalf and could present

9   such other evidence as you requested.

10             Do you understand all that?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Fifth, at the trial, you would have the

13  right to testify if you wanted to, but no one could force you

14  to testify if you did not want to, and no suggestion of guilt

15  could be drawn against you if you chose not to testify.

16             Do you understand that?

17             THE DEFENDANT:  Yes, I do.

18             THE COURT:  Finally, even if you were convicted of one

19  or both charges, you would have the right to appeal your

20  conviction.

21             Do you understand that?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Do you understand that you will be giving

24  up each and every one of those rights if you plead guilty?

25             Do you understand that?

1                THE DEFENDANT:  Yes, sir.

2                THE COURT:  Very good.  Now, you have received

3     previously a copy of the indictment.  Yes?

4                THE DEFENDANT:  Yes.

5                THE COURT:  You have gone over it with your counsel?

6                THE DEFENDANT:  Yes.

7                THE COURT:  You understand the charges against you?

8                THE DEFENDANT:  Yes, I do.

9                THE COURT:  Does counsel want count one read again in

10    open court, or do you waive the reading?

11               MR. TREANOR:  Waive the reading.

12               THE COURT:  All right.  Very good.

13               Now, count one charges you with operating an

14    unlicensed money transmitting business in violation of various

15    provisions of federal law, and that charge carries a maximum

16    sentence of five years' imprisonment, plus a maximum fine of,

17    whichever is greatest, either $250,000 or twice the amount of

18    money derived from the crime or twice the loss to the victims

19    of the crime, plus a mandatory $100 special assessment, plus up

20    to three years' supervised release to follow any imprisonment,

21    and there is also in connection with this a forfeiture

22    provision.

23               Do you understand those are the maximum punishments if

24    you plead guilty to count one?

25               THE DEFENDANT:  I understand, your Honor.

e944FAIp

1      THE COURT:  Also, do you understand that if you were
2 to violate any of the conditions of supervised release, that
3 violation could subject you to still further imprisonment going
4 even beyond the term of supervised release?
5      Do you understand that?
6      THE DEFENDANT:  Yes, sir.
7      THE COURT:  Now, in connection with all that, I have
8 been furnished with a plea agreement, which despite its
9 failings in usage and felicity of language, I will nevertheless
10 mark as Court Exhibit 1 to today's proceeding.  It takes the
11 form of a letter dated September 4th, from the government to
12 defense counsel.  And Mr. Faiella, you read this, as well, yes?
13      THE DEFENDANT:  Certainly, your Honor.
14      THE COURT:  You went over it with your counsel?
15      THE DEFENDANT:  I did.
16      THE COURT:  You understood its terms?
17      THE DEFENDANT:  Yes, I did.
18      THE COURT:  You signed it apparently earlier today in
19 order to agree to its terms, yes?
20      THE DEFENDANT:  Yes, I did.
21      THE COURT:  Now, you should understand that this
22 letter agreement is binding between you and the government, but
23 it is not binding on me.  It is not binding on the Court.
24      You understand that?
25      THE DEFENDANT:  Yes, I do.

1           THE COURT:  I could sua sponte choose to disregard it
2    altogether.
3           Do you understand that?
4           THE DEFENDANT:  Yes, I do.
5           THE COURT:  And in particular, this letter agreement
6    says that the parties have agreed to a stipulated guideline
7    range of 57 to 60 months' imprisonment.
8           You're aware that that is part of what you've agreed
9    to, yes?
10          THE DEFENDANT:  Yes, I am.
11          THE COURT:  The guidelines are certain laws that I
12   will look at to help me determine sentence, but they are not
13   binding on me.  I may agree with that guideline calculation, or
14   I may disagree with it.  Even if I agree with it, I may
15   sentence you within the guidelines or I may go below.  I don't
16   think I can go higher because I think it goes right up to
17   60 months.  Wherever I come out, you will be bound by my
18   sentence.
19          Do you understand that?
20          THE DEFENDANT:  Yes, I do.
21          THE COURT:  More generally, do you understand that if
22   anyone has made any kind of promise or estimate or
23   representation to you of what your sentence will be in this
24   case, that person could be wrong.  Nevertheless, if you plead
25   guilty, you will still be bound by my sentence.

1                  Do you understand that?
2             THE DEFENDANT:  Perfectly, sir.
3             THE COURT:  Does the government represent that this
4    letter agreement is the entirety of any and all agreements
5    between the government and Mr. Faiella?
6             MR. TURNER:  It is, your Honor.
7             THE COURT:  Does defense counsel confirm that is
8    correct?
9             MR. TREANOR:  Yes, your Honor.
10            THE COURT:  Mr. Faiella, do you confirm that's
11   correct?
12            THE DEFENDANT:  I do, sir.
13            THE COURT:  Other than the government, has anyone else
14   made any kind of promise to you or offered you any inducement
15   to get you to plead guilty in this case?
16            THE DEFENDANT:  No, sir.
17            THE COURT:  Has anyone threatened or coerced you to
18   get you to plead guilty in this case?
19            THE DEFENDANT:  No, sir.
20            THE COURT:  Does the government represent that if this
21   case were to go to trial, it could, through competent evidence,
22   prove every essential element of this crime beyond a reasonable
23   doubt?
24            MR. TURNER:  Yes, your Honor.
25            THE COURT:  Does defense counsel know of any valid

e944FAIp

1    defense that would likely prevail at trial or any other reason
2    why his client should not plead guilty?
3             MR. TREANOR:  No, your Honor.
4             THE COURT:  Mr. Faiella, please tell me in your own
5    words what it is that you did that makes you guilty of this
6    crime.
7             THE DEFENDANT:  Well, your Honor, on or about
8    December 2011 until approximately October 2013, I operated an
9    unlicensed bitcoin trading platform, and the bitcoins that were
10   traded we used for the purchase of narcotics and other illegal
11   goods.
12            THE COURT:  And you knew they were being so used?
13            THE DEFENDANT:  Yes.
14            THE COURT:  And is it also correct that you failed to
15   comply with the money transmitting business registration
16   requirements of law?
17            THE DEFENDANT:  No, your Honor, I did not comply with
18   those regulations.
19            THE COURT:  The answer to my question, I guess, was
20   yes, you did not comply; correct?
21            THE DEFENDANT:  I'm sorry, sir.
22            THE COURT:  Is that correct?
23            THE DEFENDANT:  Yes.
24            THE COURT:  All right.  At the time you did all this,
25   you knew what you were doing was illegal or wrong, yes?

e944FAIp

1          THE DEFENDANT:  No, your Honor, I did not know it was
2   illegal at the time.
3          THE COURT:  So you didn't know that it was illegal to
4   help the transportation and transmissions of funds used to
5   support the narcotics trade?
6          MR. TREANOR:  Can I have a minute, your Honor?
7          THE COURT:  Yeah.
8          THE DEFENDANT:  Your Honor, to clarify, I did not
9   believe I needed a license to trade bitcoins.  I was aware that
10  the bitcoins were being used to purchase illegal narcotics.
11         THE COURT:  Okay.  The indictment specifies both the
12  failure to comply with the transmitting requirements and the
13  knowing transportation or transmission of funds in connection
14  with narcotics, but I think the government will agree that
15  those are alternatives, both don't have to be shown to be
16  guilty.  Correct?
17         MR. TURNER:  They are, your Honor.  There is also
18  Second Circuit case law holding that the defendant need not be
19  aware of the federal registration requirements.
20         THE COURT:  Let's just talk about the narcotics prong
21  because I need to make certain.  Is it your sworn testimony
22  that you knew at some time during this period between
23  December of 2011 and October 2013 that your bitcoin
24  transmitting business was being used to promote and support
25  narcotics transactions?

         SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

1     THE DEFENDANT:  Certainly, I did.

2     THE COURT:  You knew that was illegal, yes?

3     THE DEFENDANT:  Absolutely.

4     THE COURT:  Very good.

5     Is there anything else regarding the factual
6  allocution that the government wishes the Court to inquire
7  about or that you wish to make representations about?

8     MR. TURNER:  The government would proffer that the
9  defendant's money transmitting business affected interstate
10 commerce, your Honor.

11    THE COURT:  Okay.  Very good.

12    Anything else on any aspect of the allocution from
13 either the government or defense counsel before I ask the
14 defendant to enter his plea?

15    Oh, there's something I forgot.

16    Do you understand, Mr. Faiella, that under your
17 agreement with the government that you have agreed that if I
18 sentence you to 60 months or less, you will not appeal or
19 otherwise attack that sentence?

20    You understand that?

21    THE DEFENDANT:  Yes, I do.

22    THE COURT:  Anything else from either the government
23 or the defense?

24    MR. TREANOR:  Could I have one minute, your Honor,
25 with my client?

e944FAIp

1        THE COURT:  Yes.

2        MR. TREANOR:  Nothing further, your Honor.

3        THE COURT:  Anything from the government?

4        MR. TURNER:  No, thank you, your Honor.

5        THE COURT:  Mr. Faiella, in light of everything that
6   we have now discussed, how do you now plead to count one of
7   Indictment 14 Criminal 243; guilty or not guilty?

8        THE DEFENDANT:  That would be guilty, your Honor.

9        THE COURT:  Are you pleading guilty voluntarily?

10       THE DEFENDANT:  Yes, I am.

11       THE COURT:  Because the defendant has acknowledged his
12  guilt as charged and because he has shown that he understands
13  his rights and because his plea is entered knowingly and
14  voluntarily and is supported by an independent basis of fact
15  containing each of the essential elements of the offense, I
16  accept his plea and adjudge him guilty of count one of
17  Indictment 14 Criminal 243.

18       Mr. Faiella, the next stage in this process is that
19  the probation office will prepare what is called a presentence
20  report to assist me in determining sentence.  As part of that,
21  you will be interviewed by the probation office.  You can have
22  your counsel present to advise you of your rights; but under my
23  practices, if you want to qualify for the full credit for
24  acceptance of responsibility, you need to answer each and every
25  question personally put to you by the probation office.

e944FAIp

1           Do you understand?

2           THE DEFENDANT:  Absolutely, your Honor.

3           THE COURT:  After that report is prepared in draft and
4    before it's in final, you and your counsel and also government
5    counsel have a chance to review it and offer suggestions,
6    corrections, and additions directly to the probation officer,
7    who will then prepare the report in final to come to me.

8           Independent of that, counsel for both sides are hereby
9    given leave to submit directly to the Court any and all
10   materials in writing bearing on any aspect of sentence provided
11   those materials are submitted no later than one week before
12   sentence, and we will set the sentence down for December 29th.

13          Does that work for counsel?

14          MR. TREANOR:  Your Honor, I think I am out of town.

15          THE COURT:  How about January 20th?  Does that work
16   for both sides?

17          MR. TREANOR:  Yes, your Honor.

18          MR. TURNER:  Yes, your Honor.

19          THE COURT:  4 p.m. on January 20th.

20          All right.  Anything else we need to take up today?

21          MR. TURNER:  Not from the government.

22          MR. TREANOR:  Not from the defendant.

23          THE COURT:  Very good.  Thanks very much.

24          (Adjourned)

25