

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
(212) 839 5300
(212) 839 5599 FAX

BEIJING
BOSTON
BRUSSELS
CHICAGO
DALLAS
GENEVA

HONG KONG
HOUSTON
LONDON
LOS ANGELES
NEW YORK
PALO ALTO

SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

ttreanor@sidley.com
(212) 839 8564

FOUNDED 1866

January 13, 2015

**By ECF**

Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street, Room 1340
New York, NY 10007

    Re:    *United States v. Robert Faiella*, No. 14 Cr. 243 (JSR)

Dear Judge Rakoff:

    We represent defendant Robert Faiella in the above-captioned matter, and respectfully submit this letter for the Court's consideration in connection with Mr. Faiella's sentencing, currently scheduled for January 20, 2015. At sentencing, the defense will ask the Court to exercise leniency in imposing Mr. Faiella's sentence, in recognition of the nature of Mr. Faiella's conduct, his acceptance of responsibility, and his difficult family circumstances and medical situation.

### INTRODUCTION

    Mr. Faiella stands before the Court as someone who has taken responsibility for his improper conduct and acknowledged his role in helping others procure Bitcoin for their own use, including for use in buying narcotics. Mr. Faiella is no criminal mastermind, and he was not a drug dealer. He committed his crime by failing to get a license to transmit funds and by helping people online to obtain Bitcoin. He did so while lying on his back in bed in Florida using a laptop. In reality, Mr. Faiella is a once hard-working tradesman who found himself in desperate straits through a combination of debilitating health problems that prevented him from working his trade, legal issues that consumed him and his family, and an economic climate that made finding gainful employment extremely difficult. He did not commit his crime to fund a lavish lifestyle or in a manner that engendered violence. He did so solely out of a desire to provide support for those who have depended on him – his wife, his son, and his stepdaughter. Mr. Faiella now understands that, through his own fault and by putting his own liberty at risk, he has put in jeopardy the very people he sought to support.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships



The Honorable Jed S. Rakoff
January 13, 2015
Page 2

In light of the nature of Mr. Faiella's conduct, his acceptance of responsibility, and the fact that his intentions – though misguided – were noble, we respectfully request that the Court impose a sentence no greater than the bottom of the stipulated advisory Guidelines range.

## MR. FAIELLA'S HISTORY AND CHARACTER

Bobby Faiella had every intention of spending his life in the family plumbing business. He was born in 1960 to a plumber and a stay-at-home mom. (PSR ¶91). In 1983, Mr. Faiella, a college graduate and educated man, became a licensed plumber. When Mr. Faiella's father began a home building business, Bobby continued to work as a plumber, was in business for himself throughout the 1980s, and was quite successful. But an economic downturn changed the family fortunes significantly. Mr. Faiella filed for bankruptcy in 1990, but through hard work and perseverance, thereafter got himself back on his feet. When his father lost his building business to the bank in 1991, Mr. Faiella stepped up and took responsibility for his parents and thereafter provided them with approximately $5,000 a month to cover their mortgage and living expenses.

Supporting both himself and his parents took its toll on Mr. Faiella. It required him to work more hours plumbing, which meant more hours working on his back and in small, enclosed spaces. In the mid-1990s, his rigorous schedule finally began to take its toll. Bobby ruptured several disks in his back. (*See* PSR ¶98). His ability to be productive has been limited ever since.

Mr. Faiella's medical condition in no way minimizes his conduct, but it does explain the desperation of a once able-bodied man who found that he could no longer work with his hands and quite literally *earn* a living. It also shows that incarceration will pose significant challenges for Mr. Faiella. Mr. Faiella suffers from Degenerative Disc Disease, which has resulted in several compressed and/or herniated disks throughout his lower back. This causes radiating pain into Mr. Faiella's legs which makes it all but impossible for him to stand for more than a very brief period of time, as well as causing extreme pain if Mr. Faiella is in an upright position for more than 2-4 hours per day. In addition to making it impossible for Mr. Faiella to ply his trade as a plumber, this condition has negatively impacted Mr. Faiella's quality of life to a substantial degree, as he is essentially bedridden for all but approximately two hours of each day.

Mr. Faiella has undergone a number of procedures to attempt to alleviate his pain, including numerous pain medications taken multiple times a day, a steroidal epidural injection, chiropractic treatments, and water therapy in a pool to relieve pressure on his spine. At present, Mr. Faiella also uses an electrical stimulation device 3-4 times per week to try to alleviate his pain. Mr. Faiella has been advised that relatively risky surgery is likely his only option, but he has resisted that solution. Unfortunately, it is likely that, without surgery, he will continue to degenerate and become eventually completely immobile.



SIDLEY AUSTIN LLP
SIDLEY

The Honorable Jed S. Rakoff
January 13, 2015
Page 3

In 1997, to try and lessen his physical and financial burdens, Mr. Faiella helped his parents with the purchase of an apartment building that his father would manage as a way of having a small stream of income. Mr. Faiella continued to run his plumbing business, and led a generally happy life at this point. In 2000, Mr. Faiella married his wife Suzanne, and took it upon himself to care for her daughter Brianna. They were shortly joined by the Faiellas' only child together, Michael. (PSR ¶93).

But the new millennium would not prove to be auspicious for Bobby. From 2000 to 2002, Mr. Faiella underreported his business's receipts and therefore underpaid his taxes by around $15,000. (PSR at 30-31). The IRS began an audit of Mr. Faiella in 2003, which was an expensive and time-consuming process. In November 2006, Mr. Faiella tried to take responsibility for his tax issues, filing amended tax returns and paying all of the taxes due. And when Mr. Faiella was charged with filing a false tax return the following year, Mr. Faiella admitted what he had done and, in July 2007, pleaded guilty. (PSR ¶85). Mr. Faiella was fined and sentenced to a short period of probation and home confinement.

In the meantime, Mr. Faiella's back problems worsened, and by December 2005 (PSR at 31) he could no longer work. In 2006, Mr. Faiella's life took a significant turn for the worse. Between the IRS and Mr. Faiella's injuries, he could no longer provide the comfortable lifestyle for his parents, as he had done for more than a decade. Newly unemployed and trying to navigate the difficult process of applying for disability benefits, Mr. Faiella's family became embroiled in a difficult conflict over the apartment building Mr. Faiella had purchased to provide income for his parents. Mr. Faiella's parents tried to sell the building without his permission, and he had to resort to litigation to stop them. The relationship with his parents and his siblings has never been the same since.

In 2008, with global financial markets in turmoil, Bobby was not immune to the economic pain affecting much of the country. He lost the apartment building that caused the rift in his family to foreclosure. He was forced to sell his house, and Bobby and Suzanne and their two kids decided to move to Florida, where Bobby would attempt once again to make an honest living as a plumber in a more hospitable climate. (PSR ¶94). Mr. Faiella got his Florida plumber's license, but he simply was not physically capable of performing the work any longer. He and Suzanne tried other jobs, including running an Italian food cart, but Mr. Faiella's back was not up to the task. Nor was Bobby the only member of his family to suffer physically. Suzanne suffers from severe anxiety and depression, which also contributed significantly to their inability to continue running their briefly-successful culinary venture.

Unfortunately, the Social Security Administration did not appreciate Mr. Faiella's physical condition and the financial burden his injury placed on those around him, and they denied Mr. Faiella's claim for disability benefits in 2010. Ever since his injury and to this day,



The Honorable Jed S. Rakoff
January 13, 2015
Page 4

Mr. Faiella has been trying to obtain those benefits so that his family would have a stable source of income.

Desperate for a solution—particularly one that would enable his son, Michael, to stay in a special program for advanced students at his school in Florida—Mr. Faiella, who was unable to leave his bed for any extended period of time, turned to the Internet. First he searched for jobs, but he also read, and he learned that there was an increasing need for Bitcoin to facilitate peer-to-peer transactions through the Internet. Restricted by his injuries to an hour of computer usage a day, Mr. Faiella thought he might have found the answer to his prayers, and began his short, unhappy career as BTCKing, the conduct for which he is being sentenced today.

Twenty years ago, Mr. Faiella was a homeowner with an investment property and a businessman with an ability to provide a more than comfortable life for his family. But because of his injuries and his legal woes, Mr. Faiella lost all that. But Bobby Faiella has always sought ways to support those around him—even now his greatest concern is that his son continue to have access to educational opportunities that will given him the best chance of developing his talents and that his wife, who herself suffers from a number of psychological disorders, is properly cared for.

### MR. FAIELLA'S OFFENSE AND ACCEPTANCE OF RESPONSIBILITY

The Court is already familiar with the facts of Mr. Faiella's case. Beginning in December 2011, after the failure of his attempts to make it as a plumber and cook in Florida and the denial of his claim for disability benefits, Mr. Faiella sold Bitcoin for cash, advertising his services on the website known as "Silk Road." (PSR ¶13). Mr. Faiella knew that what he was doing was wrong. He knew that at least some of the individuals buying Bitcoin from him were doing so in order to facilitate illegal narcotic purchases on Silk Road. But Mr. Faiella's desperate situation drove him to stick his head in the sand and ignore what his customers might be doing with the Bitcoin he sold them.

Despite his moral culpability for facilitating the larger illegal operations on Silk Road, the actual crime that Mr. Faiella committed is relatively less reprehensible. Without minimizing the significance of running an illegal money transmitting business in violation of 18 U.S.C. § 1960(b)(1), Mr. Faiella did not himself sell any drugs on Silk Road, and he did not launder proceeds of drug transactions on Silk Road back into dollars. He simply sold Bitcoin without a license to people who he believed intended to purchase drugs. In his mind, Mr. Faiella was able to rationalize what he knew deep-down to be wrongful conduct because he was steps removed from the illegal transactions his customers were engaging in—they were responsible for their own choices, not him—and that story allowed Mr. Faiella to suppress the voice of honesty in which he spoke to the Court on September 4, 2014, when he accepted responsibility for his crime.



The Honorable Jed S. Rakoff
January 13, 2015
Page 5

Notwithstanding his knowledge that the overall enterprise of Silk Road was illegal, Mr. Faiella still tried, when possible, to keep his dealings on the right side of the law. As the Court is aware, the state of the law at the intersection of § 1960 and virtual currency exchanges was at the time, and remains today, very much in flux. FinCEN did not issue guidance requiring those like Mr. Faiella to register as money transmitting businesses until 2013. Prior to that point, Mr. Faiella convinced himself that—from the perspective of the legal registration requirement that he has pleaded guilty to violating—he would be able to maintain his Bitcoin business along the lines of "a private peer-to-peer investment group." (PSR ¶57(d)). It is for this reason that he *rejected* the offer of Silk Road's owner operator to formalize his business into an exchange that would have to be licensed. Likewise, when he operated his business, Mr. Faiella did so openly and in his own name, and did not behave in the manner of a knowing criminal, attempting to conceal himself and thwart the authorities at every turn. (PSR ¶60). In sum, although Mr. Faiella was aware that essentially any activity in which he engaged that related to Silk Road was likely to be illegal, he did take steps to try to follow the law pertaining to money transmitting businesses, and never involved himself in more obviously illegal conduct such as selling narcotics. And at the end of the day, for a man in desperate straits, it was not a particularly profitable crime. The small fee on these transactions netted Mr. Faiella a total of only approximately $30,000, (PSR ¶72) far less than the profits of even small-scale street drug organizations that this Court sees on an all-too-regular basis. For Bobby Faiella, crime quite literally didn't pay.

Mr. Faiella has never tried to argue that he did not do the things the Government accused him of. He has argued to this Court that the Government's understanding of the law applicable to his conduct is incorrect, but he has never failed to take responsibility for the conduct itself. And when this Court ruled that the defense was wrong and the Government's theory was correct, Mr. Faiella took responsibility for his illegal conduct, and he pleaded guilty. As the PSR states, Mr. Faiella "has clearly demonstrated acceptance of responsibility for the offense." (PSR ¶81).

### DETERMINING A SENTENCE THAT IS NOT GREATER THAN NECESSARY TO SERVE THE INTERESTS OF JUSTICE

In commending to district judges the sound exercise of their studied discretion in sentencing, the Supreme Court has instructed that, after determining the applicable Guidelines range, this Court should "consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009). The Second Circuit has described as the "lodestar" of this analysis "the parsimony clause of 18 U.S.C. § 3553(a), which directs sentencing courts to 'impose a sentence sufficient, but not greater than necessary to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 963 (2014). In particular, it is appropriate to make adjustments to a sentence in order to promote



The Honorable Jed S. Rakoff
January 13, 2015
Page 6

respect for the law and adequately punish the defendant; to discourage the defendant from committing the same acts again; and to protect the public from further crimes by the defendant or others.

A sentence no greater than the bottom of the Stipulated Guidelines Range would certainly be more than adequate to promote respect for the law and to punish Mr. Faiella. He has already accepted a forfeiture allegation of almost $1 million, and he will likely spend the rest of his life quite literally repaying his debt to society. Moreover, the unsettled nature of the law in this area deserves consideration. The operation of an illegal money transmitting business, while serious, does not reveal any sort of abject disregard for the law and for the basic norms of society. On the contrary, the very fact of Mr. Faiella and Charlie Shrem's prosecutions demonstrates significantly that respect for the law does not permit business owners in their situation to turn a blind eye to the illegal activities of their customers. An especially harsh sentence is, respectfully, not necessary to communicate that message.

Nor is there particular need for punitive correction to discourage Mr. Faiella from committing this or other crimes again. Mr. Faiella has been a hardworking man who turned to this avenue from his bed when faced with an inability to find any other options. Mr. Faiella is not a hardened criminal who can be expected to return to crime, particularly not this crime, which he is acutely aware bears consequences far out of proportion to its benefits. The Court must of course reflect the seriousness of the offense. But any sentence more than the bottom of the advisory range would only deprive Suzanne of the husband who has supported her and helped her through her own illness, would deprive Brianna of the man who cared for her as if she were his own child, and would deprive Michael of the father who will do whatever his ailments will permit to make sure that his son succeeds with the gifts he has. Any sentence more than that would be punitive without a purpose, would not promote any valid aim of the sentencing statute, and would certainly be "greater than necessary."

## CONCLUSION

For the reasons set forth above, we respectfully ask the Court to impose a sentence no greater than the minimum of the Stipulated Guidelines Range.



The Honorable Jed S. Rakoff
January 13, 2015
Page 7

                                            Respectfully submitted,

                                            Timothy J. Treanor

cc:    Serrin Turner, Assistant United States Attorney
        James S. Mullen, United States Probation Officer